**DELTA DRILLING CO., et al., Appellants,**

v.

**Pedro CRUZ and Consuelo Cruz, Appellees.**

**No. 13–85–228–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 20, 1986.

Rehearing Denied March 20, 1986.

**662**

Russell Serafin, Mills, Shirley, McMicken & Eckel, Galveston, Olan Keeter, M. Colleen McHugh, Head & Kendrick, Corpus Christi, L. Keith Slade, Danny L. Van Winkle, Tracy K. Christopher, B. Lee Ware, Vinson & Elkins, Houston, for appellants.

Ernest H. Cannon, Houston, for appellees.

Before UTTER, SEERDEN and BENAVIDES, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a judgment in favor of appellees, Pedro and Consuelo Cruz, following a jury verdict. Pedro Cruz, an employee of Dowell Company, was seriously injured when an elevator in which he was riding fell from a drilling rig floor to the ground. The drilling rig and elevator were owned by Delta Drilling Company (Delta). The elevator was manufactured by C.C. Services. Moore McCormick Energy, Inc. was the owner-operator of the drilling site. McCormick settled with appellees during trial for $250,000.00; $225,000.00 to Pedro Cruz and $25,000.00 to Consuelo Cruz. Delta was the only defendant found liable by the jury. The jury found Delta negligent and grossly negligent and awarded $1,910,450.00 as actual damages; $60,000.00 to Consuelo Cruz for loss of consortium; $78,000.00 for Pedro Cruz's future medical expenses; and $6,000,000.00 in exemplary damages.

Delta, McCormick, and C.C. Services have brought this appeal alleging various points of error. Delta's points will be addressed first.

In its first point of error, Delta contends that the trial court erred because the court's charge did not correctly submit the question of gross negligence to the jury. The court's charge on gross negligence was as follows:

### SPECIAL ISSUE NO. 17

Do you find from a preponderance of the evidence that the conduct of Delta Drilling Company was a heedless and reckless disregard of the rights of others affected by it?

"Heedless and reckless disregard" means more than momentary thought-

lessness, inadvertence, or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it.

You are instructed that with regards to this issue you may consider only the acts or omissions, if any, *that were authorized or ratified by a person acting in a managerial or supervisory capacity on behalf of Delta Drilling Company.* [emphasis ours]

Delta contends that *King v. McGuff,* 149 Tex. 432, 234 S.W.2d 403 (1950), requires that the jury be questioned on the conduct of a specific employee or agent whose acts or omissions are contended to be grossly negligent.[1]

Delta further contends that Special Issue No. 17 allowed the jury to speculate as to the grossly negligent conduct of any employee of Delta, whether in a managerial or supervisory capacity or not. In support thereof, Delta cites this court's opinions in *Western Construction Co. v. Valero Transmission Co.,* 655 S.W.2d 251 (Tex. App.—Corpus Christi 1983, no writ) and *Delhi Pipeline Corp. v. Lewis, Inc.,* 408 S.W.2d 295 (Tex.Civ.App.—Corpus Christi 1966, no writ).

The cases cited above do not support Delta's position that specific vice-principals, i.e., persons acting in a managerial or supervisory capacity, must be identified in a special issue inquiring of gross negligence. In *Delhi Pipeline Corp. v. Lewis, Inc.,* 408 S.W.2d at 301, this Court held that the following special issue and instruction was insufficient to support a jury finding that Delhi Corp. was grossly negligent.

### SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the Plaintiff Lewis, Inc., is entitled to exemplary damages against the Defendant Delhi Pipeline Corp.

\* \* \* \* \* \*

You are instructed that before you can assess exemplary damages, you must believe and find from a preponderance of the evidence that Defendant Delhi Pipeline Corporation, acted willfully, maliciously and with utter disregard for the rights of the Plaintiff Lewis, Inc.

In this connection you are also instructed that punitive damages may be assessed as punishment for a wrongful act done, if the facts warrant the same. In awarding such damages, if any, you may consider the sense of wrong and insult to the Plaintiff Lewis, Inc., and the damage to his reputation, if any, as a result of the wrongful acts, if any of the Defendant Delhi Pipeline Corp. The amount to be fixed, if any, is in the sound discretion of the jury.

*Id.* at 301.

We held that since "Lewis did not request submission of issues concerning tortuous acts on the part of officers representing the corporation in its corporate capacity nor by lesser representatives of Delhi; nor as to whether the conduct of the latter had been authorized or ratified by the corporation," there was no jury finding establishing liability for exemplary damages.

In *Western Construction Co. v. Valero Transmission Co.,* 655 S.W.2d 251, also decided by this Court, we were asked to determine whether or not a special issue submitted on negligence sufficiently comported with the requirements of *King v. McGuff* so as to support a finding of gross negligence and an award of exemplary damages. The special issue inquired whether "[o]n the occasion in question was Western Construction Company acting

---

1. The Supreme Court in *King* set forth the basis upon which exemplary damages can be assessed against a corporation, stating: "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the employer or a manager of the employer ratified or approved the act." *King v. McGuff,* 234 S.W.2d at 405.

through its employees, negligent in striking and rupturing the pipeline after it had acquired notice, if any, of its presence?" *Western Construction Co. v. Valero Transmission Co.,* 655 S.W.2d at 254. The conduct of two employees was in question. Glenn Hyden was a superintendent and was supervisor over the project involved. Pete Zamora was a mere employee, having neither managerial nor supervisory duties. In discussing this special issue, we wrote:

> The infirmities which exist with Special Issue No. One are apparent. The issue inquires only whether appellant, acting through its employees was negligent. It fails to inquire [into] the negligence of the employees and then fails to specify whether or not the negligence found by the issue is attributable to Hyden, the undisputed manager. Perhaps negligence is attributed to both employees, Hyden and Pete Zamora.

*Id.*

We held that a special issue inquiring as to the negligence of two employees, one with managerial duties and the other without, could not support a judgment for exemplary damages against the corporation because such a judgment can only be based upon one of the grounds set forth in *King v. McGuff.*

■ In the present case, the trial court's instruction accompanying Special Issue No. 17 restricted the jury's consideration to "the acts or omissions, if any, that were authorized or ratified by a person acting in a managerial or supervisory capacity." This instruction substantially complies with the requirements for the imposition of exemplary damages based upon the gross negligence of a corporation as set forth in *King v. McGuff.* Delta's first point of error is overruled.

In points of error two and three, Delta contends that the evidence was factually and legally insufficient to support the jury's award of exemplary damages. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.

1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 361 (1960).

■ Exemplary damages may be imposed upon a corporation for the acts of its agent if at the time of the wrongful act the agent was employed in a managerial capacity and was acting within the scope of his employment. *Missouri Pacific Railroad Co. v. Dawson,* 662 S.W.2d 740 (Tex.App.— Corpus Christi 1983, writ ref'd n.r.e.). Such an agent is "one who has the authority to employ, direct and discharge servants, engages in nondelegable or absolute duties; to whom the master has confided management of the whole or a department or a division of his business." *Id.* at 744. In order for the jury's award of exemplary damages to stand, we must determine whether or not the evidence of Delta's conduct demonstrates "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Williams v. Steves Industries, Inc.,* 699 S.W.2d 570 (Tex.1985); *International Armament Corp. v. King,* 674 S.W.2d 413, 416 (Tex.App.—Corpus Christi 1984), *aff'd,* 686 S.W.2d 595 (Tex.1985). In making this determination, the Supreme Court in *Burk Royalty v. Walls,* 616 S.W.2d 911, 922 (Tex.1981), stated:

> the existence of gross negligence need not rest upon a single act or omission, but may result from a combination of negligent acts or omissions, and many circumstances and elements may be considered in determining whether an act constitutes gross negligence. A mental state may be inferred from actions. All actions or circumstances indicating a state of mind amounting to a conscious indifference must be examined in deciding if there is some evidence of gross negligence.

In *Williams v. Steves Industries, Inc.*, 699 S.W.2d at 573, the Supreme Court wrote:

Thus, the test for gross negligence is both an objective and a subjective test. A plaintiff may prove a defendant's gross negligence by proving that the defendant had actual subjective knowledge that his conduct created an extreme degree of risk. In addition, a plaintiff may objectively prove a defendant's gross negligence by proving that under the surrounding circumstances a reasonable person would have realized that his conduct created an extreme degree of risk to the safety of others.

No exact line can be drawn between negligence and gross negligence. However, the character of the actual act required is determined by the terms used to define gross negligence: 'conscious indifference' denotes a decision, in the face of an impending harm to another party, to not care about the consequences of the act which may ultimately lead to that harm.

The uncontroverted evidence shows that J.D. Poston, Delta's "tool-pusher," was acting in a managerial and supervisory capacity for Delta at the drilling site where this accident occurred. Mr. Poston himself testified that he oversees the rig and the drilling operations and was the supervisor for Delta in charge of the rig at the time of the accident. He could hire and fire, and order and sign for supplies. He further testified that he was the man who was ultimately responsible for maintaining the elevator for Delta. Mr. Poston stated that, "it is my business to try to take care of everything." Bryan Hadwin was a "roughneck"[2] who was on the job at the time of the accident. Mr. Hadwin testified that Mr. Poston was the tool-pusher at the time of the accident and as such was in charge of the drilling rig. He further testified that Mr. Poston supervised approximately 20 men and was the highest man in command at the rig site.

■ This is sufficient evidence that Mr. Poston was an agent of Delta "employed in a managerial capacity" as contemplated by *King v. McGuff.*

Mr. Hadwin testified that approximately two weeks prior to the accident he informed Mr. Poston that the cables were in a bad condition and needed replacing. He testified that "they were pretty burred and they were coming apart [and] needed to be replaced." To his knowledge, Mr. Poston did nothing about the cables after he told him that they were worn and needed to be replaced. Mr. Hadwin further testified that as far as he knew the cables were never maintained at all and that he never saw Mr. Poston ever make an examination of the cables. Gordon Christopher, President of C.C. Services, the manufacturer of the elevator, testified that these cables should be changed when they become frail, flatten or develop burrs. He further testified that his maintenance and instruction manual stated that the cables should be changed when they become frailed or flatten.

■ Mr. Poston testified that he never received the maintenance and instruction manual on the elevator. The instruction manual warned that "when changing or adjusting cables, the traveling block assembly or blocks on bottom ... *MUST* be level (Horizontally). If block assembly is not level, you may cause excessive wear to cables. Do Not let cage bump ground or bottom of elevator frame. The cables must remain tight when cage is completely down. Cables must be changed when frailed or flattened." Mr. Poston testified that he was not aware of any of this information. He further testified that if the cable looked worn it should be changed. Mr. Poston said Delta had no periodic inspection schedule set up for inspection of the cables and that had he known or observed that the cables were burred or "whiskered" he would have "changed the cable or stop[ped] using it." He said that

---

**2.** A roughneck is a general maintenance man at a drilling rig whose job is to maintain the rig, take care of motors and repair whatever needs to be repaired.

Delta had no program set up to maintain the elevator and that his supervisor told him to "just grease it whenever I felt like necessary, change the cables on it." He stated that he didn't know when the cables should be changed and that had he been aware of the manufacturer's maintenance and service instructions he would have complied with them. He admitted that he had no idea how long the cables would last and that Delta should have tried to find out how long they would last. Mr. Poston testified that he was the man with the responsibility of making the decision of whether or not to change the cables. This evidence is sufficient to uphold the jury's finding of gross negligence.

■ Furthermore, the lack of any safety standards, maintenance or inspection schedules in relation to the elevator would be sufficient to support the jury's finding of "an entire want of care as to indicate that the act or omission in question was the result of conscious indifference to the rights, welfare, or safety of the persons affected by it." As the Supreme Court wrote in *Burk Royalty Co. v. Walls*, 616 S.W.2d at 923–24, "a corporation has the non-delegable duty to provide rules and regulations for the safety of its employees, to furnish safe machinery and instrumentalities, to provide a safe place to work, and to select careful and confident fellow servants."

■ We must assume that the jury read and abided by the instruction given to it by the court, i.e., that "[they] may consider only the acts or omissions, if any, that were authorized or ratified by a person acting in a managerial or supervisory capacity on behalf of Delta Drilling Company." Viewed in this light, we hold that there was evidence upon which the jury could base its finding of gross negligence on Mr. Poston's part. Appellant's points of error two and three are overruled.

■ Delta next complains in points of error four and five that the jury's award of $6,000,000.00 in exemplary damages was "so excessive as to be manifestly unjust, thereby demonstrating that the verdict was reached through passion and prejudice and not from the evidence;" and further, that it was not supported by sufficient evidence. Delta does not challenge the jury's assessment of nearly $2,000,000.00 in actual damages. On appeal, the finding of the jury will not be disturbed on grounds of excessiveness if there is any probative evidence to sustain the award. We will not substitute our judgment for that of the jury unless the record indicates that the jury was influenced by passion, prejudice or improper motive. We will grant a remittitur only if after reviewing the evidence we find that the award is so excessive as to shock our conscience. *Jim Walters Homes, Inc. v. Reed*, 695 S.W.2d 825 (Tex.App.—Corpus Christi 1985, writ pending); *International Armament Corp. v. King*, 674 S.W.2d at 419; *Texas Construction Service Company of Austin, Inc., v. Allen*, 635 S.W.2d 810 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). The amount awarded by the jury in this case is large, but the mere fact that an award is large is no indication of passion, prejudice or improper motive. *Texas Construction Service Company of Austin, Inc. v. Allen*, 635 S.W.2d at 812. The determination of an amount to award as exemplary damages must depend on the facts of each particular case. *Alamo National Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981). Some of the factors to consider in determining whether an award of exemplary damages is reasonable are: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* at 910; *K–Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Houston Lighting and Power Co. v. Sue*, 644 S.W.2d 835 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Having already determined that there exists sufficient evidence to support the jury's award of exemplary damages, we further hold that such award is not such as to "shock

our consciences," and there is no evidence that the jury arrived at its award as a result of passion, prejudice, improper motive, or by disregarding the evidence. We are aware of the rule of reasonable proportionality, and feel that the exemplary damages awarded to appellees by the jury are reasonably proportionate to the actual damages found. In this case, the ratio is approximately three to one. Such a ratio has been held to be not unreasonable. *Costa v. Storm*, 682 S.W.2d 599 at 605 (Tex.App. 1984). Delta's points of error four and five are overruled.

In point of error number six, Delta contends that there is no evidence to support the jury's award of damages to Consuelo Cruz for loss of consortium. Loss of consortium has been defined by the Supreme Court to include "the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage." *Whittlesey v. Miller*, 572 S.W.2d 665, 666 (Tex.1978). Although it may present some difficulty in translating the loss into a dollar amount, "the issue generally must be resolved by the impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently and in harmony with the evidence." *Id.* at 667. Since Mrs. Cruz did not testify, the only evidence which could be construed to go to proof of damages for loss of consortium came from Mr. Cruz himself. Mr. Cruz testified that "we [his family] go to the park, make little bar-b-que, play baseball with the kids and volley ball, when it was hot go to the beach, swim a little bit, play with the kids, and, you know, sometimes Saturday night we go to dance, when my wife, you know, just have fun with the kids, with the family." When asked what he did around the house before the accident, he responded, "Well, I do a little bit of everything, you know, like, well, take care of the yard work and in the house, if a pipe broke or I tried to fix it if I can ... I try to learn all I can, you know,

because I do a lot of things, you know.... My wife keep me busy." He further testified that he has difficulty carrying things such as a sack of groceries.

■■ In *Whittlesey v. Miller*, 572 S.W.2d at 666, in defining loss of consortium, the Supreme Court stated that "this definition primarily consists of the emotional or intangible elements of the marital relationship. In Texas, it does not include the 'services' rendered by a spouse to the marriage." [3]

■■ Although Mr. Cruz's testimony may be evidence of damages sustained by himself and therefore compensable in that regard, we hold that such testimony is no evidence of "the emotional or intangible elements of the marital relationship" necessary for recovery of damages for loss of consortium. We therefore sustain this point of error and reverse the trial court's judgment as to the award of $60,000.00 to Mrs. Cruz for loss of consortium and render that she take nothing by that claim.

We decline to address Delta's seventh point of error because it is merely cumulative of its other points of error.

Appellant/cross-appellee McCormick brings one point of error complaining of failure of the trial court to grant McCormick's claim for contractual indemnity from appellant/cross-appellee Delta. At the time of the occurrence made the basis of appellees' suit, Delta was working for McCormick as a drilling contractor under the terms of a Master Rotary Drilling Contract. Section 11.08 of the Contract provides:

> Contractor [Delta] agrees to protect, indemnify and save operator [McCormick] harmless, from and against all claims, demands and causes of action of every kind in character arising [in] favor or [sic] third parties on account of bodily injuries, death or damage to property in anyway resulting from the wilful or negligent acts or omissions of Contractor

---

**3.** "The term 'services' is generally taken to include the performance by a spouse of household and domestic duties. [citations omitted] In Texas, it is a concept that is entirely separate and distinct from that of consortium." *Whittlesey v. Miller*, 572 S.W.2d at 606, n 2.

and/or Contractor's agents, employees, representatives or subcontractors.

Prior to submission of the case to the jury, and after Delta rejected McCormick's request that Delta assume its defense pursuant to the above-quoted indemnity provision, McCormick settled with appellees for $250,000.00. The trial court found that Delta had refused to accept the defense of McCormick or approve the settlement; that said settlement was reasonable, and, based upon the evidence, that McCormick had potential liability to appellees. The parties agreed in open court that the trial court could make all findings of fact and rule upon the contractual claims of McCormick asserted against Delta. The trial court then denied McCormick's cross action for indemnity against Delta.

The first question raised by McCormick's point of error is by what standard we review the indemnity clause in question. Delta argues that the guidelines set forth in *Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818 (Tex.1973), are applicable to this case. In *Fireman's Fund*, the Supreme Court held that in order for an indemnity agreement to protect an indemnitee from the consequences of its own negligence, the duty of the indemnitor to do so must be expressed in clear and unequivocal terms. *See Eastman Kodak Co. v. Exxon Corp*, 603 S.W.2d 208 (Tex.1980); *McKesson Chemical Co. v. Phelps Dodge Co.*, 638 S.W.2d 64 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). It is Delta's argument that under the "clear and unequivocal test" the indemnity provision in question does not clearly provide for indemnification by Delta of McCormick for the type of injuries suffered by appellee.

Initially, we find that the clear and unequivocal test is not applicable to the indemnity provision in question. The test is only applicable where the indemnitee seeks to absolve itself of its own negligence. Clearly that is not the intention of the indemnity clause. The clear meaning of the clause is to require Delta to indemnify McCormick from injuries to third parties caused by *Delta's* negligence and not McCormick's.

It is axiomatic that where the damages result from conduct for which indemnity is provided and which does not involve the negligence of the indemnitee, liability is established. *Monical and Powell, Inc. v. Bechtel Corp.*, 404 S.W.2d 911 (Tex.Civ. App.—Eastland 1966, writ ref'd n.r.e.). In such cases as here, the clear and unequivocal test, or the expressed negligence rule, as discussed in *Fireman's Fund*, is not applicable. *M.M. Sundt Construction Co. v. Contractor's Equipment Co.*, 656 S.W.2d 643 (Tex.App.—El Paso 1983, no writ).

The only finding of negligence in this case is against Delta. However, having already settled with appellees, no negligence issues against McCormick were submitted to the jury. This raises the second question arising from McCormick's point of error; how do we treat a settling indemnitee?.

In *Delta Engineering Corp. v. Warner Petroleum Inc.*, 668 S.W.2d 770 (Tex.App. —Houston [1st Dist.] 1984, writ ref'd n.r. e.), the Court was faced with an analogous situation. The Court held that "[t]o recover under an indemnity agreement, the settling indemnitee must prove his 'potential liability' as well as the reasonableness of the settlement between himself and the plaintiff." *Id.* at 772. *See Fireman's Fund Insurance Co. v. Commercial Standard Insurance Co.*, 490 S.W.2d 818 (Tex. 1972); *Mitchell's, Inc. v. Friedman*, 157 Tex. 424, 303 S.W.2d 775 (1957); *Sun Oil Company v. Renshaw Well Service, Inc.*, 571 S.W.2d 64 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). As previously noted, the trial court found that there was sufficient evidence to support the finding that McCormick's settlement with the appellees was reasonable and that McCormick had potential liability to the appellees.

We therefore give effect to the intentions of the parties as manifested by the indemnity agreement as written. *Ideal Leasing Service v. Amoco Production Co.*

*Inc.*, 662 S.W.2d 951 (Tex.1983). The clear language of the agreement requires Delta to indemnify McCormick for its own acts of negligence. McCormick's point of error is sustained and Delta is ordered to indemnify McCormick for the amount of McCormick's settlement with appellees (Mr. & Mrs. Cruz) plus costs and attorney's fees incurred by McCormick in defending against appellees' claims.

Appellant/cross-appellee C. C. Services brings a single point of error complaining of the action of the trial court in entering a judgment in favor of Delta against C. C. Services. Both Delta and C. C. Services have filed cross-actions for contribution and indemnity against each other as a result of appellees' claims. The parties settled their cross-actions by agreeing to split equally the actual damages found by the jury, up to the lesser of their respective insurance limits. Special issues concerning C.C. Services' liability to the appellees were submitted to the jury and absolved C. C. Services from any fault in connection with appellees' injuries.

The trial court's judgment states that the parties' agreement was to "be equally responsible for the actual damages awarded to Plaintiffs, Pedro and Consuelo Cruz, by the jury irrespective of and regardless of whatever the jury should find in answer to the liability issues submitted by the Court in its charge." Although the record reveals that this was in fact the parties' agreement, the trial court went further and entered the following as its judgment:

[It is] ORDERED, ADJUDGED and DECREED that Delta Drilling Company have and recover of and from C. C. Services Incorporated and C. C. Services Incorporated d/b/a/ Christopher Manufacturing Company, the sum of Seventeen Thousand Five Hundred Dollars ($17,-500.00) with respect to the claim of Consuelo Cruz, and it is further

ORDERED, ADJUDGED and DECREED that Delta Drilling Company have and recover of and from C. C. Services Incorporated and C. C. Services Incorporated d/b/a Christopher Manufac-

turing Company, the sum of Eight Hundred Eighty-nine Thousand Seven Hundred Fourteen and 63/100 Dollars ($889,-714.63) with respect to the claim of Pedro Cruz.

"It is well settled that the parties must agree upon the provisions of the settlement agreement and the Court has no power to supply terms, provisions, or essential details not previously agreed to by the parties." *Travelers Ins. Co. v. Williams*, 603 S.W.2d 258 (Tex.Civ.App.—Corpus Christi 1980, no writ). Delta has not challenged C. C. Services' position on this question on appeal, and we, therefore, take C. C. Services' statement of the facts concerning the settlement agreement between themselves and Delta to be true. TEX.R. CIV.P. 419. Where the judgment fails to conform to the settlement agreement, the judgment will not be enforced. *See Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292 (Tex.1976).

The judgment of the trial court is clearly outside the scope of the settlement agreement between the parties. No mention is made in the agreement of any arrangement to indemnify each other. Their respective liabilities flow only to Mr. & Mrs. Cruz. Appellant's, C. C. Services, Inc's., point of error is sustained.

The judgment of the trial court is REVERSED as to the award of $60,000.00 to Mrs. Cruz and against Delta for loss of consortium and RENDERED that she take nothing by that claim. The judgment of the trial court denying McCormick's cross-action for indemnity is REVERSED and the judgment is RENDERED that Delta indemnify McCormick for the amount of McCormick's settlement with appellees (Mr. and Mrs. Cruz) ($250,000.00) plus costs and attorney's fees incurred by McCormick in defending against appellee's claims. Further, the judgment of the trial court is REFORMED to delete that portion of the judgment which awards Delta Drilling Company judgment against C. C. Services, Inc. The judgment is otherwise AFFIRMED.