David Michael **DOUGHERTY**, William Girlinghouse, Howard E. Smith and Marc Stephen Whitfield, Plaintiffs-Appellants,

v.

**SANTA FE MARINE, INC.,** et al., **Defendants,**

**Watercraft America, Inc., Defendant-Appellee.**

No. 82–3317
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1983.

---

George & George, Ltd., Vincent J. DeSalvo, Baton Rouge, for Dougherty, Girlinghouse & Smith.

Dan C. Garner, Garner & Munoz, New Orleans, La., for Marc Stephen Whitfield.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Frank X. Neuner, Jr., Lafayette, La., for Santa Fe, Inc.

Hammett, Leake & Hammett, Jos. G. Gallagher, Jr., New Orleans, La., for Watercraft, America, Inc.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

This case arises out of an accident on the BLUEWATER II, a mobile offshore drilling barge owned by Santa Fe Marine, Inc. The accident involved a lifeboat manufactured by Watercraft America, Inc. Four of the men who were injured brought this action against Santa Fe Marine and Watercraft alleging a negligent failure to warn. All claims brought against Santa Fe were settled before trial. After the trial, the jury returned a verdict in favor of Watercraft and against all the plaintiffs. Plaintiffs argue that the district court erred in failing to instruct the jury that Watercraft was negligent per se. They also argue that the jury's verdict was contrary to the weight of the evidence. We reject both these arguments and affirm the judgment of the district court.

The lifeboats on the BLUEWATER II were suspended sixty feet above the water from davits extending over the side of the

rig. There are two ways to place one of the lifeboats into the water. The first way is to pull on a white cable which hangs from the ceiling of the boat. This procedure allows the boat to descend at a controlled rate of speed. The second way is to pull a release lever located near the boat operator's station. When this lever is pulled, the boat is immediately disconnected from the cables that support it. This causes the boat to drop into the water.

During the course of a weekly emergency drill, part of the crew on BLUEWATER II gathered around to view a demonstration on how to lower one of the vessel's lifeboats into the water. Five men, including the plaintiffs, entered the lifeboat. In attempting to lower the boat a few feet, Howard Smith, one of the plaintiffs, pulled the wrong lever. The boat plummeted sixty feet into the water below.

The plaintiffs alleged at trial that Watercraft did not adequately warn them of the dangerous consequences that would result from pulling the release lever. They argued that Watercraft's violation of certain Coast Guard regulations constituted negligence per se.

As noted above, BLUEWATER II is a mobile offshore drilling unit. Subchapter I–A of Title 46 of the Code of Federal Regulations is entitled "Mobile Offshore Drilling Units." The purpose of this subchapter is to prescribe "rules for the design, construction, equipment, inspection and operation of mobile offshore drilling units operating under the U.S. flag." 46 C.F.R. § 107.01. Part 108 of the subchapter regulates the design of drilling units and the equipment that must be used on them.

Subpart B deals with equipment markings and instructions. Section 108.645(b) provides:

> Each mechanical disengaging apparatus control lever must be colored red with the following marked on or next to the lever: "DANGER—LEVER DROPS BOAT" or "DANGER—LEVER RELEASES HOOKS".

Unfortunately, § 108.645(b) is not the only regulation on point. Section 108.-507(a)(1) requires all drilling units to have launching equipment for each lifeboat with mechanical disengaging apparatus "that is approved under Subpart 160.033 of this chapter." Section 160.033–3(b) provides:

> Mechanical disengaging apparatus shall be designed to release both ends of the lifeboat simultaneously under tension, which shall be effected by partially rotating a shaft which shall be continuous and extend from point of contact with the hooks. The control effecting the rotation of the shaft shall be painted bright red and shall have thereon in raised letters the words "DANGER—LEVER DROPS BOAT". The control shall be readily accessible, secured to a permanent part of the lifeboat structure, and so installed as not to interfere with the inspection of any removable parts of the lifeboat or its equipment.

There is a significant difference between the language of the two sections. While § 108.507(a)(1) and § 160.033–3(b) require the warning to be placed *on* the lever, § 108.645(b) allows the warning to be placed on or *next to* the lever. The difficulty in this case arises because Watercraft located the required warning next to the release lever rather than on it.

█ Faced with these conflicting regulations, the district court read both sections to the jury, but refused to instruct them that a violation of any of the relevant regulations in the context of this case would be negligence per se. The plaintiffs argue that this conclusion was in error. We disagree. Under the unique circumstances of this case, the district court's solution to the problem is an eminently reasonable one.

█ When the doctrine of negligence per se applies, the general standard of care of a reasonable man is replaced by a specific rule of conduct established in a statute or regulation. *See generally Swoboda v. United States,* 662 F.2d 326, 329 (5th Cir.1981), cert. denied, —— U.S. ——, 102 S.Ct. 2961, 73 L.Ed.2d 1351; *Lowe v. General Motors Corp.,* 624 F.2d 1373, 1381 (5th Cir.1980) ("If the statute in question creates a minimum

standard of care ... then an unexcused violation, an act done with less than minimum care, would have to be negligence."); PROSSER, LAW OF TORTS §§ 36 *et seq.* (1971). The failure to follow any Coast Guard regulation which is the cause of an injury establishes negligence per se. *Kernan v. American Dredging Co.,* 355 U.S. 426, 438–39, 78 S.Ct. 394, 401, 2 L.Ed.2d 382 (1958); *Reyes v. Vantage S.S. Co.,* 609 F.2d 140, 143 (5th Cir.1980).

Implicit in virtually all discussions of negligence per se is the unspoken assumption that the regulation in question establishes a clear minimum standard of care. If the regulation fails to do so, the reason for applying the doctrine fades. An ambiguous or contradictory regulatory standard defeats the certainty on which the rule of per se liability rests. Persons affected are deprived of a sure standard upon which they may fashion their affairs. *See* Restatement (Second) of Torts § 874A. (The specificity of a regulation is a relevant consideration in determining whether the doctrine should be applied.)

The regulations involved in this dispute do not establish a clear minimum standard of care. One regulation permitted Watercraft to locate the warning sign exactly where it did—next to the lever. The other regulation mandated that the warning be placed only on the lever. Watercraft was faced with conflicting directions. Using the illumination of reflective hindsight, we can say that a reasonable manufacturer in Watercraft's position might have complied with the stricter regulation. In that way, the company could have met the requirements of both regulations. Little or no additional cost would have been incurred. But the determination of whether Watercraft did what a reasonable manufacturer would have done when it read the regulations and made its design decision is a question for the jury. The district court committed no error in instructing the jury that a violation of § 108.507, § 160.033–3(b), or § 108.645(b) did not constitute negligence per se.

Of course, such regulations should not be ignored. In the case at bar, the jury should have considered them as illustrative of a reasonable manufacturer's conduct. The district court correctly charged the jury to this effect.

■ The plaintiffs also argue that the jury's verdict was contrary to the weight of the evidence. Where the evidence is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, this court may not disrupt the jury's findings. *Slavin v. Curry,* 690 F.2d 446, 449 (5th Cir.1982); *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 725, 728–29 (5th Cir.1982); *Fairley v. American Hoist and Derrick Co.,* 640 F.2d 679, 681 (5th Cir.1981).

■ Substantial evidence supports the jury's verdict in this case. The plaintiffs admitted that Watercraft placed a warning sign within inches of the release lever. The bright red sign read:

DANGER

This lever *drops boat at all times*—do not release until in or very near water. (To release, remove pin, lift handle and pull aft).

The placard was approximately six inches long and two and one-half inches high. The letters were relatively large. There was no other language on the sign.

There was also a large decal in the lifeboat giving launching instructions. The decal specifically warned that the release lever was not to be pulled until the boat was waterborne. Watercraft also published an instruction manual that alerted the reader of the danger involved in pulling the lever prematurely.

■ In an action for negligent failure to warn, there is no right to recover where the party to be warned is already aware of the danger. *Smith v. Borg-Warner Corp.,* 626 F.2d 384, 388 (5th Cir.1980); *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 464 (5th Cir.1976). There was substantial evidence

in this case to support Watercraft's theory that the plaintiff-operator of the lifeboat was familiar with the danger of prematurely pulling the release lever. He was licensed by the Coast Guard as an able-bodied seaman certified in lifeboats. He had previously participated in many lifeboat drills, and the proper launching procedure was regularly reviewed during those drills. On at least one occasion, the lifeboat had been lowered into the water and launched without incident.

The district court's instructions to the jury were accurate. The jury's verdict is supported by substantial evidence. The judgment of the district court is

AFFIRMED.