**TARGA MIDSTREAM SERVICES LIMITED PARTNERSHIP,**
Plaintiff,

v.

**K–SEA TRANSPORTATION PARTNERS, L.P.,**
Defendant.

Civil Action No. G–05–0629.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 19, 2007.

Gregory F. Burch, John Michael Holland, Rachel Hope Stinson, Locke Liddell et al., Houston, TX, for Plaintiff.

Thomas Canevari, Wayne D. Meehan, Freehill Hogan and Mahar LLP, New York, NY, John L. Schouest, Phelps Dunbar LLP, Houston, TX, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

SIM LAKE, District Judge.

Plaintiff Targa Midstream Services Limited Partnership ("Targa") has filed a Motion for Partial Summary Judgment to establish the standard of care that governed its duty to mark a submerged platform. (Docket Entry No. 69) For the reasons explained below the court will grant Targa's motion.

### I. *Factual Background*

Targa owns Platform WC 229A (the "platform"), a pipeline riser platform located in the Gulf of Mexico.[1] Targa had the right to operate and maintain the platform in accordance with a permit it had obtained from the United States.[2] On September 24, 2005, the platform was severely damaged when Hurricane Rita struck and crushed the platform beneath the surface of the water.[3] After the hurricane struck, no part of the platform was visible from the surface of the water.[4] The platform's highest point was fifteen feet below the surface of the water.[5]

To alert mariners to the presence of the submerged platform, Targa purchased a "smart buoy."[6] However, since that buoy would not be able to be deployed for several weeks, Targa marked the platform's four corners with four unlit orange buoys.[7]

On the early morning of November 11, 2005, six weeks after the platform had sunk, Second Mate Mary O'Brien Golden navigated the REBEL, an integrated tug and barge, over the submerged platform.[8] The tug and barge collided with the platform causing the REBEL to lose much of its cargo of oil.[9] K–Sea Transportation

---

1. Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment and Brief in Support Thereof, Docket Entry No. 69–5, Exhibit D, Application for Modification to Existing 12″ Natural Gas Right-of-Way Pipeline, p. 3.

2. *See id.*, Exhibit D.

3. *Id.*, Exhibit B, Deposition of Sohrab Tafreshi, pp. 17–18.

4. *Id.*

5. *Id.* at 33–34.

6. *Id.*, Exhibit F, Deposition of Kyle Kubin, pp. 62–61.

7. *Id.*, Exhibit H, Deposition of Richard Maestas, p. 96–97, 106:2–6.

8. *Id.*, Exhibit O, Highfield Aff. ¶ 4.

9. K–Sea Transportation Partners, L.P. and K–Sea Operating Partnership, L.P.'s Answer to Second Amended Complaint and Counterclaim, Docket Entry No. 95, p. 8.

Partners, LP ("K–Sea") owned the REB-EL.

Targa sued K–Sea alleging that K–Sea negligently allided with Targa's platform.[10] K–Sea denied Targa's allegations and brought a counterclaim against Targa, alleging that Targa negligently failed to mark the platform.[11] To establish the standard of care as to that counterclaim, Targa filed this pending Motion for Partial Summary Judgment.[12]

## II. *Standard of Review*

Under Rule 56 of the Federal Rules of Civil Procedure, a party defending against a counterclaim may move "for a summary judgment in the party's favor as to all or any part [of the counterclaim]." Fed. R.Civ.P. 56(b). The moving party may obtain a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "[S]ummary judgment is appropriate where the only issue before the court is a pure question of law." *She-line v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir.1991) (citations omitted).

## III. *Analysis*

To prove its counterclaim against Targa for maritime negligence, K–Sea must establish that Targa owed K–Sea a duty of care, breached that duty, and thereby

caused K–Sea's injury. *Canal Barge Co., Inc., v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir.2000). Targa does not dispute that it owed K–Sea a duty of care.[13] What Targa, K–Sea, and Rio Underwriters dispute is the source of Targa's duty and what standard of care applies to gauge whether Targa breached its duty. K–Sea and Rio Underwriters argue that 33 C.F.R. Part 64 ("Part 64") establishes that Targa had a duty to immediately mark its sunken platform, while Targa contends that its duty of care is governed by 33 C.F.R. Part 67 ("Part 67"), and that even if Part 64 applies, Part 64 provides Targa a reasonable time to mark the platform.[14]

### A. Part 64 Establishes Targa's Duty to Mark Its Sunken Obstruction

 While the starting point of interpreting a regulation is the regulation's language, the court must also examine the "design of the [regulation] as a whole." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir.2005). None of the parties have presented authority definitively establishing which regulation governs a sunken pipeline riser platform such as Targa's, and this court has not found any. However, having reviewed the language and structure of these regulations, the court concludes that Targa's duty of care is governed by Part 64 because Part 64 regulates the marking of structures that create sudden and unexpected dangers to naviga-

10. Plaintiff Targa Midstream Services Limited Partnership's Second Amended Complaint, Docket Entry No. 61, pp. 4–5.

11. K–Sea Transportation Partners, L.P. and K–Sea Operating Partnership, L.P.'s Answer to Second Amended Complaint and Counterclaim, Docket Entry No. 95, pp. 7–10.

12. Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment and Brief in Support Thereof, Docket Entry No. 69, p. 7.

13. *See* Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment and Brief in Support Thereof, Docket Entry No. 69, pp. 4, 12.

14. Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment and Brief in Support Thereof, Docket Entry No. 69, pp. 9–16.

tion, *see* 33 C.F.R. §§ 64.11 to .16, while Part 67 regulates the marking of fixed structures that present no similar exigencies. *See* 33 C.F.R. §§ 67.01–1(a), –5(a).

Part 64 "prescribes rules relating to the marking of structures, sunken vessels and other obstructions for the protection of maritime navigation." 33 C.F.R. § 64.01. Part 64 imposes a duty upon the owner of a vessel that sinks in navigable waters to "mark it immediately with a buoy or daymark during the day and with a light at night." 33 C.F.R. § 64.11(a). Because owners of "other obstructions" are required to "mark [their obstructions] in the same manner prescribed for sunken vessels," 33 C.F.R. § 64.11(c), the owner of a sunken obstruction is under the same duty to immediately mark an obstruction as a vessel owner. Given its close proximity to established lines of navigation,[15] Targa's sunken platform was an obstruction within the meaning of Part 64. *See* 33 C.F.R. § 64.06 ("Obstruction means anything that endangers, or interferes with navigation.").

Targa argues that Part 64 cannot apply as a matter of law because Part 64 specifically exempts from its requirements structures covered by Part 67, 33 C.F.R. § 64.03(b)(5), which include pipeline riser platforms like Targa's, *see* 33 C.F.R. § 67. 01–5(a).[16] Although Part 67 generally regulates both surface structures, such as pipeline riser platforms, *see* 33 C.F.R. § 67.01–5(a), and "submerged" structures, such as breakwater barges, *see id.*, Part 67 contains no provision that governs the marking of structures that sink suddenly and unexpectedly in navigable waters.

Structures that present unknown hazards to navigation appear to be outside the scope of Part 67. To qualify for regulation under Part 67, all structures, whether submerged or on the surface, must not only be in a known, fixed location, but must also be authorized by a Corps of Engineers' permit. *See* 33 C.F.R. §§ 67.01– 1(a), –5(a). Accordingly, given that the location of structures falling under Part 67 is known (whether above or under the water), Part 67 does not address the expeditious marking of unexpectedly sunken structures such as Targa's platform. On the contrary, the marking requirements for structures regulated by Part 67 are predetermined based on the structure's nature and location. *See, e.g.,* 33 C.F.R. §§ 67.20–5, .25–5, .30–5. Any modification or waiver of those requirements requires approval by the Coast Guard District Commander. 33 C.F.R. § 67.40–5. This same approval process applies to marking submerged artificial structures in the Gulf of Mexico: "Prior to marking a submerged artificial structure the owner shall submit form CG–2554 to the District Commander for approval."[17] Thus, rather than providing owners of unexpectedly sunken structures with guidance on how and when to mark their sunken structures, Part 67 requires advance Coast Guard approval before proceeding. This regulatory regime does not address emergencies such as the sinking of Targa's platform.

Part 64 requires the owner of a sunken structure to immediately mark the ob-

---

15. *See, e.g.,* Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment and Brief in Support Thereof, Docket Entry No. 69, Exhibit E, Hollinger Depo. pp. 49–50, 93; Exhibit O, Highfield Aff. ¶ 4.

16. Targa Midstream Services Limited Partnership's Motion for Partial Summary Judg-

ment and Brief in Support Thereof, Docket Entry No. 69, pp. 3–4.

17. Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment and Brief in Support Thereof, Docket Entry No. 69, Exhibit V, U.S. Coast Guard Policy for Marking Submerged Artificial Structures in the Gulf of Mexico ¶ 4.

struction with a buoy and a light, 33 C.F.R. § 64.11, and then to report the marking to a District Commander to obtain approval for the marking. *See* 33 C.F.R. § 64.13(a)-(b). If the District Commander finds that the owner's marking is inconsistent with other regulations, the owner's markings "must be replaced as soon as practicable with approved markings." 33 C.F.R. § 64.13(b).

The statutes authorizing the creation of these two regulatory schemes also indicate that Part 64, not Part 67, was intended to regulate sunken obstructions such as Targa's platform that present sudden and unexpected dangers to navigation. Part 64 was created under the authority of 33 U.S.C. § 409. *See* 33 U.S.C. § 64.01 (citing as authority 33 U.S.C. § 409, known as the Wreck Act). Like its enforcing regulation, § 409 requires the owner of a vessel, raft, or other craft that is wrecked and sunk in navigable waters to immediately mark the wreckage with a buoy during the day and a light at night. 33 U.S.C. § 409.

The statute authorizing the creation of Part 67, 14 U.S.C. § 85 (*see* 33 C.F.R. 67.01-1 (citing as authority 14 U.S.C. § 85)), reveals a related but distinct purpose. Section 85 authorizes the creation of rules and regulations for "the protection of maritime navigation, relative to the establishment, maintenance, and operation of lights and other signals on fixed and floating structures in or over waters subject to the jurisdiction of the United States and in the high seas for structures owned or operated by persons subject to the jurisdic-

tion of the United States." *Id.* Although concerned with protecting navigation, the language of § 85 does not reflect the same concern for sudden and unexpected damages to navigation embodied in § 409. Instead, as with its enforcing regulation, § 85 is concerned with the marking of known, fixed structures.

## B. Targa's Standard of Care

■ Having determined that Part 64 establishes that Targa had a duty of care to mark the sunken platform, the court must determine what standard will be used to determine whether Targa breached its duty. The standard of care to be applied in a claim of maritime negligence is a question of law. *Theriot v. United States,* 245 F.3d 388, 400 (5th Cir.1998). The standard of care may be established by statutes or regulations, maritime custom, or by general principles of negligence law. *S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160, 165 (5th Cir.1979) (citing *Pennsylvania R.R. Co. v. S.S. Marie Leonhardt,* 202 F.Supp. 368, 375 (E.D.Pa. 1962)). K–Sea and Rio Underwriters argue that Part 64 provides the standard of care that governs this case: that the owner of a sunken obstruction "shall mark it immediately."[18] 33 C.F.R. § 64.11(a).

■ When a statute or regulation "establishes a clear minimum standard of care," "the doctrine of negligence per se applies, [and] the general standard of care ... is replaced by [the] specific rule of conduct established in the statute or regulation." *Dougherty v. Santa Fe Marine, Inc.,* 698 F.2d 232, 234–35 (5th Cir.1983).

---

18. K–Sea Transportation Partners, L.P. and K–Sea Operating Partnership, L.P.'s Response in Opposition to Targa Midstream Partnership's Motion for Partial Summary Judgment and Brief in Support Thereof, Docket Entry No. 78, pp. 11–12 [hereinafter "K–Sea's Response in Opposition"]; Interested Underwriters as Subrogees of Rio Energy International Inc.'s Response in Opposition to Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment and Joinder in K–Sea Transportation Partners, L.P. and K–Sea Operating Partnership, L.P.'s Opposition to Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment, Docket Entry No. 77, p. 4 [hereinafter "Rio Underwriter's Response in Opposition"].

If a regulation contains an ambiguous standard, however, "the reason for applying the doctrine fades," and the common-law standard will apply. *Id.* at 235. In cases of maritime negligence the common-law standard of care is "reasonable care under existing circumstances." *Coumou v. United States*, 107 F.3d 290, 295–96 (5th Cir.1997).

Targa argues that even under Part 64, it had "a reasonable time under the circumstances within which to mark the Platform with a lighted buoy." [19] K–Sea and Rio Underwriters respond that to hold that Part 64 merely required Targa to act reasonably under the existing circumstances would be to hold Targa "to a lesser standard of care than the owner of a sunken vessel," [20] and would result "essentially [in] a ruling of limited or no duty with respect to damages in suit." [21]

The Fifth Circuit addressed this question in *Nunley v. M/V Dauntless Colocotronis*, 727 F.2d 455 (5th Cir.1984). *Nunley* involved a ship owner's claim that a barge owner was liable under § 409 of the Wreck Act for failing to mark a barge that had sunk three years before the ship struck the sunken barge. *Id.* at 457. The barge owner denied any liability and claimed that it was not negligent in failing to mark its sunken barge. *Id.* The court in Nunley noted that § 409 and its enforcing regulations established the owner's duty to mark the sunken barge, *see id.* at 459–60, 462, and further established that the barge owner's duty to mark the wreckage was "judged ... in terms of negligence." *Id.* at 459. In other words, the court held that the standard of care applicable to cases involving the failure to

"immediately" mark wreckage is "the standard of care applicable in ordinary maritime negligence actions." *Id.* at 462. Under this standard, a court must "take into consideration all of the relevant circumstances," *id.* at 463, to determine whether the owner scrupulously observed his duty to mark the obstruction, *id.* at 460. Other courts outside the Fifth Circuit have applied a similar standard of care in cases involving an owner's duty to mark a sunken vessel. *See, e.g., The Anna M. Fahy*, 153 F. 866, 867 (2d Cir. 1907) ("[T]he word 'immediately' as used in [33 U.S.C. § 409] .... should be construed [as] having in view the circumstances of the particular situation in hand; what might be justifiable delay in one case would be culpable delay in another."); *accord Morania Barge No. 140, Inc. v. M & J Tracy, Inc.*, 312 F.2d 78, 80 (2d Cir. 1962); *Berwind–White Coal Mining Co. v. Pitney*, 187 F.2d 665, 668 (2d Cir.1951); *Petition of Anthony O'Boyle, Inc.*, 161 F.2d 966 (2d Cir.1947); *City of New York v. Morania No. 12, Inc.*, 357 F.Supp. 234, 241 (S.D.N.Y.1973); *Lowery v. The Ellen Bouchard*, 128 F.Supp. 16, 24 (N.D.N.Y. 1955) (noting that an owner who failed to mark its wreck would have been liable under either § 409 or "the general doctrine of negligence").

Nunley and the other decisions interpreting § 409 establish that § 409's immediacy requirement (and thus that of Part 64) is a reiteration of the common-law standard of reasonable care under existing circumstances. That courts have held "reasonable care" to exact an exceptionally limited amount of time in wreckage cases,[22] does not bear on what the stan-

---

19. *See, e.g.,* Targa Midstream Services Limited Partnership's Motion for Partial Summary Judgment and Brief in Support Thereof, Docket Entry No. 69, p. 1

20. K–Sea's Response in Opposition, Docket Entry No. 78, p. 10.

21. Rio Underwriter's Response in Opposition, Docket Entry No. 77, p. 1.

22. *See, e.g., Morania Barge No. 140, Inc.,* 312

dard of care is but how it applies under a particular set of circumstances.

### IV. *Conclusion*

Targa's Motion for Partial Summary Judgment (Docket Entry No. 69) is **GRANTED.** Although the court concludes that Part 64, rather than Part 67, establishes Targa's duty to mark its sunken platform, the court also concludes that Part 64 required Targa to act reasonably under the existing circumstances, rather than "immediately."

F.2d at 80–81 (holding that an owner's failure to mark its sunken barge within two-and-a-half hours of it sinking was unreasonable);

*Lowery,* 128 F.Supp. at 24 (ninety minutes was held unreasonable).