COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WILLIAM JUREK JR., | § | No. 08-08-00110-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 254th District Court |
| | § | |
| TAWANA COUCH-JUREK, | | of Dallas County, Texas |
| | § | |
| Appellee. | | (TC# 06-03093-R) |
| | § | |
| | § | |

**O P I N I O N**

Appellee Tawana Couch-Jurek filed for divorce from Appellant William Jurek Jr. After a bench trial, a final decree of divorce was entered by the 254th District Court of Dallas County, Texas. William Jurek Jr. presents four issues on appeal. We find that the trial court properly admitted parol evidence relating to a premarital agreement between the parties and that the premarital agreement effected a constitutional exchange or bilateral partition of community interests in income from separate property. We find that the trial court committed harmless error by mischaracterizing rental properties purchased on credit during the marriage by Tawana, in that the loan agreements did not require the lenders to look solely to Tawana's separate property for satisfaction of the debt. We find that William waived any claim he may have had under ERISA by failing to plead that affirmative defense. We affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

William and Tawana were married on October 20, 1990 and Tawana filed for divorce February 24, 2006. The characterization and division of the marital estate was tried to the court.

The trial court entered the final decree of divorce on December 25, 2007. On January 22, 2008, the trial court signed findings of fact and conclusions of law. On March 3, 2008, William filed his timely notice of appeal.

At trial no premarital agreement between the parties could be produced, and William denied ever having signed one. However, Tawana claimed, and the trial court found, that prior to their marriage in 1990, the parties did in fact enter into a premarital agreement. Further, the Court found that the premarital agreement between William and Tawana was identical to a 1991 premarital agreement between Tawana's sister, Juanita Couch, and her second husband. The 1991 premarital agreement was produced at trial.

The alleged 1990 premarital agreement, if identical to the 1991 premarital agreement, would establish that the parties agreed, among other things, that each party would retain "all rights, including profit and income" to his or her separate property, including any property acquired during the marriage, "as if no marriage had been consummated between them."

Charles G. Clay was the attorney who prepared the 1991 premarital agreement, and he testified that he remembered preparing an agreement for Tawana in 1990 as well. He testified that the two premarital agreements were identical except for "the parties, the date, and the exhibits attached thereto." Mr. Clay also testified to having prepared a third premarital agreement for Juanita in 1987. Mr. Clay's testimony was admitted without objection and a copy of Juanita's 1991 premarital agreement was admitted into evidence over William's objection as to relevance. Juanita asserted that she had seen Tawana's 1990 premarital agreement.

Mr. Clay retired from the practice of law some years prior to the present case and had since destroyed his records. As a result, he was unable to produce a copy of Tawana's premarital agreement. Also, Jerlene Sawier, the notary public who witnessed and notarized the signing of the

premarital agreement, passed away in 1992, and her record book could not be located.

Throughout the marriage, the behavior of both parties was consistent with there being the existence of a premarital agreement. Stephen Grissom, the CPA who prepared Tawana's tax returns, testified that he met with Tawana and William soon after their marriage, and that William confirmed that he and Tawana had signed a premarital agreement. Grissom testified that William told him, "[w]e have an agreement – we have a marital property agreement that what's hers is hers and mine is mine." Grissom testified that throughout the marriage both parties filed income tax returns as "married filing separately" and reported their income from jobs and properties separately. Without a premarital agreement between Tawana and William, Grissom testified he would have had to file amended returns for a number of years. No objection was raised to Grissom's testimony.

The couple maintained separate bank accounts. When purchasing new properties, they would submit only their own financial information to lenders. They each received title to new properties in his or her name only. William did not claim any "partial ownership" in any of the rental properties for which title was in Tawana's name.

Tawana asserted that around the time it was signed her copy of the premarital agreement was placed in a file box marked "1991" in the attic, and that she never saw the premarital agreement again. When she searched for the agreement after filing for divorce, the box marked "1991" was missing from the attic. Tawana stated that she did not destroy the premarital agreement.

Based on this evidence, the trial court concluded that "there was a valid pre-nuptial agreement and [that the] parties did act in a course of conduct that supported its execution and existence throughout the 16 years of the marriage." The court found that the premarital agreement between Tawana and William was in the same format, content, and wording as the premarital agreement prepared for Juanita in 1991.

During the marriage, Tawana acquired more than thirty rent houses, with title in her name only. Tawana acquired the properties on credit from various lenders to whom she submitted only her financial data; however, there is no evidence that she received an agreement from the lenders to look solely to her separate property for satisfaction of the debt. During her marriage, Tawana received income from her separate property.

Prior to her marriage Tawana started a Southwest Airlines 401(K) Plan and a Southwest Airlines Co. Profit Sharing Plan, which grew in value during her marriage.

## **DISCUSSION**

### *Premarital Agreement*

In Issue One, William argues that the trial court abused its discretion by admitting Juanita's premarital agreement as parol evidence of a 1990 premarital agreement between Tawana and William. William further argues that the evidence was insufficient for the trial court to find that the terms of the two premarital agreements were identical. Tawana responds by challenging the substance of Issue One and by asserting that William failed to preserve the issue for appellate review in that William waived any error by failing to object to testimony explaining the contents of the 1991 premarital agreement.

### *Parol Evidence Objection*

In order to preserve error, the complaint must be made to the trial court by a timely request, objection, or motion that states the grounds for the ruling that the complaining party seeks from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. *See* TEX.R.APP.P. 33.1(a)(1)(A). As a general rule, a party is required to present a complaint to the trial judge before being allowed to raise the issue on appeal. *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003). Moreover, the complaint on appeal must

match the complaint raised in the trial court. TEX.R.APP.P. 33.1(a); *J.C. Penney Life Ins. Co. v. Heinrich,* 32 S.W.3d 280, 290 (Tex.App.–San Antonio 2000, pet. denied). The general guideline is that the trial presentation must have been sufficient to put the trial judge on notice that the party was relying upon the argument that he later offers to the appellate tribunal. *Stewart v. State*, 995 S.W.2d 251, 258 (Tex.App.–Houston [14th Dist.] 1999, no pet.).

William argued at trial that Texas Rule of Evidence 1004(e) prohibits the admission of the 1991 premarital agreement as parol evidence used to prove the contents of a document when that document is closely related to a "controlling issue" and that the 1991 premarital agreement was irrelevant. However, William never specifically objected to the admission of the 1991 premarital agreement under any other provision of Rule 1004.[1]

For the first time on appeal William argues that it was an abuse of discretion for the trial court to admit the 1991 premarital agreement because there was insufficient evidence to show that William "knowingly, intentionally and wantonly" took or destroyed the original 1990 premarital agreement. This argument is not related to the objection raised at trial. This argument more closely relates to TEX.R.EVID. 1004(a), the lost document exception, under which the evidence in question was admitted.

---

[1] TEX.R.EVID. 1002 generally precludes admission of parol evidence to prove the contents of a document. An exception is TEX.R.EVID 1004, which provides that an original document is not required, and other evidence of the contents of a writing is admissible if:

(a) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;

(b) No original can be obtained by any available judicial process or procedure;

(c) No original is located in Texas;

(d) At the time when an original was under the control of the party against whom offered, that party was put on notice, by pleadings or otherwise, that the content would be subject of proof at the hearing, and that party does not produce the original at the hearing; or

(e) The writing, recording or photograph is not closely related to a controlling issue.

At trial William specifically referred the court to TEX.R.EVID.1004(e) not TEX.R.EVID. 1004(a). William's trial objections based on relevance, "controlling matters," and on TEX.R.EVID. 1004(e) are different from the argument raised on appeal. Therefore, the issue is waived. *See Collazo v. State*, No. 08-00-00289-CR, 2002 WL 26296, at *1 (Tex.App.–El Paso Jan. 10, 2002, no pet.) (not designated for publication) (objection to testimony as irrelevant did not preserve error asserted on appeal that the same testimony did not meet the requirements for opinion testimony).

Furthermore, when other competent evidence of the fact in question appears in the record, the improper admission of the evidence will not constitute error. *Wolfe v. Wolfe*, 918 S.W.2d 533, 538 (Tex.App.–El Paso 1996, writ denied). It is the general rule that error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection. *Volkswagen of America, Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (citing *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984)). "Objections should be repeated when a witness testifies to facts which were objected to in a document offered in evidence and admitted over objection . . . ." *Kelso v. Wheeler*, 310 S.W.2d 148, 150 (Tex.Civ.App.–Houston 1958, no writ). Error can be waived where a document is admitted into evidence under objection but the document is subsequently treated by both parties as being in evidence for all purposes in that both parties without objection interrogate witnesses concerning its contents. *Id.* To preserve error William could have requested a running objection, or objected outside the presence of the jury to all the testimony relating to the 1991 premarital agreement as permitted by TEX.R.EVID. 103(a)(1). *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991); *Gillum v. State*, 888 S.W.2d 281, 285 (Tex.App.–El Paso 1994, pet. ref'd). "A running objection is required to be specific and unambiguous." *Huckaby v. A.G. Perry & Son, Inc.*, 20 S.W.3d 194, 203 (Tex.App.–Texarkana 2000, pet. denied).

In *Kelso*, a document was admitted into evidence for the limited purpose of showing a part of its contents. However, thereafter, both parties interrogated witnesses about all its contents, without objection. The appellate court held that this caused any error in the document's admission into evidence to be waived. *Kelso,* 310 S.W.2d at 149-50.

William initially objected to the admission of **any** evidence regarding the contents of the 1990 premarital agreement and he argued that the 1991 premarital agreement was irrelevant. However, once the trial judge allowed the 1991 agreement into evidence, both parties referred to it and described its contents.

Both parties questioned Charles Clay without objection regarding a section of the premarital agreement that declared "hereafter-acquired property" would be separate property. When Charles Clay, Juanita Couch, and Tawana Couch were asked whether the premarital agreement was identical to Tawana's premarital agreement, William did not object. William never requested a clear and unambiguous running objection to any testimony regarding the 1991 agreement. By allowing testimony regarding details of the 1991 agreement, without objection, William waived any error in the admission of the 1991 agreement.

Even if William had preserved error, we find that the court did not err in admitting the 1991 agreement. The admission of evidence is committed to a trial court's sound discretion. *See Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). This Court reviews trial court's decisions to admit evidence under an abuse of discretion standard. *Franco v. Franco*, 81 S.W.3d 319, 340-41 (Tex.App.–El Paso 2002, no pet.).

TEX.R.EVID. 1002 states "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." TEX.R.EVID. 1002 generally precludes admission of parol evidence to prove the contents

of a document. TEX.R.EVID 1004 provides the exceptions for when an original document is not required, and permits other evidence of the contents of a writing if all originals are lost or have been destroyed, unless the proponent of the evidence lost or destroyed the evidence in bad faith. TEX.R.EVID. 1004 (a).

The purpose of the best evidence rule is to produce the best obtainable evidence, and if a document cannot as a practical matter be produced because of its loss or destruction, then the production of the original is excused. *Utica Mut. Ins. Co. v. Bennett*, 492 S.W.2d 659, 665 (Tex.Civ.App.–Houston [1st Dist.] 1973, writ dism'd).

In its findings of fact numbers 16-18 and conclusion of law 25 the court found that the "original was lost and the loss was not the result of any action by [Tawana]." We find ample evidence in the record to support this conclusion. Once the existence of the 1990 premarital agreement was established and there was no evidence that it was lost or destroyed by the proponent, Tawana, the trial court properly admitted evidence to establish the contents of the 1990 premarital agreement under Rule 1004(a).

Finally, William argues that Tawana's belief that the original document was taken "knowingly, intentionally and wantonly" by William at or around the time Tawana filed for divorce is not supported by the evidence; however, no such showing is required by TEX.R.EVID. 1004(a). This argument is without merit.

### *Sufficiency of the Evidence Objection*

In the same issue, William argues the trial court erred in concluding that the 1990 premarital agreement prepared for Tawana was identical to the 1991 premarital agreement prepared for Juanita because of insufficient evidence. William does not raise a challenge to any of the trial court's findings of fact. In an appeal from a bench trial, a trial court's findings of fact "have the same force

and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). A trial court's findings of fact may be reviewed for legal and factual sufficiency under the same standards that are applied in reviewing evidence to support a jury's answer. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When findings of fact are filed, and are unchallenged, as here, they occupy the same position and are entitled to the same weight as the verdict of a jury. They are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting our review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* at 822. To determine a "no evidence" or "matter of law" point this Court must disregard all evidence contrary to the trial court's finding, and if there is any remaining evidence which would support the verdict or judgment, the trial court's judgment must be upheld. If after the removal of all contrary evidence this Court finds an absence of any evidence which would support the verdict or judgment, a contrary conclusion to the verdict or judgment is required as a matter of law. *McGalliard*, 722 S.W.2d 696.

Charles G. Clay testified that he was the attorney who prepared the 1987 and 1991 premarital agreements for Juanita, and that he prepared a premarital agreement for Tawana in 1990. He testified that the 1991 premarital agreement was identical to the 1990 premarital agreement. This

evidence meets *City of Keller's* first, second, and third legal sufficiency tests listed above.

As to the fourth test, William claims that the trial court's conclusion about the contents of the agreement is against logic because Mr. Clay could not have used the 1991 agreement as a model to draw up the 1990 agreement. William claims it must have been the 1987 premarital agreement prepared for Juanita that was used as a form for the 1990 agreement. Mr. Clay explained that it was the 1990 agreement which was used as a model for the 1991 agreement and that he would not have used the 1987 agreement as a model for the 1990 agreement because in 1990 he would have been using a new form book. Both Juanita and Tawana testified that the 1990 and 1991 agreements were identical. The evidence does not establish conclusively the opposite of the vital fact. Issue One is overruled.

### *Rent Houses*

In Issue Two, William contends that the court erred in characterizing the rent houses acquired by Tawana during the marriage as separate property. Specifically, William references thirty houses that he asserts were bought with no money down and on community credit.

All property on hand at the dissolution of marriage is presumed to be community property. TEX.FAM.CODE ANN. § 3.003(a) (Vernon 2006). It is a rebuttable presumption that requires a spouse claiming assets as separate property to establish their separate character by clear and convincing evidence. TEX.FAM.CODE ANN. § 3.003(b) (Vernon 2006). Property owned before marriage, or acquired during marriage by gift, devise, or descent, is separate property. TEX.FAM.CODE ANN. § 3.001 (Vernon 2006). Community property consists of all property, other than separate property, acquired by either spouse during marriage. TEX.FAM.CODE ANN. § 3.002 (Vernon 2006).

A legal sufficiency challenge to a fact finding requiring clear and convincing evidence does not mandate an alteration in the standard of review. *In re B.R.*, 950 S.W.2d 113, 118-19

(Tex.App.–El Paso 1997, no pet.). A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. There are basically two distinct "no-evidence" claims. When the party with the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *See Kimsey v. Kimsey*, 965 S.W.2d 690, 699-700 (Tex.App.–El Paso 1998, pet. denied). The latter applies here. In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the challenged finding and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 89 (Tex.App.–El Paso 1995, writ denied). If any probative evidence supports the fact finder's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661-62 (1951); *Kimsey*, 965 S.W.2d at 699-700; *Parallax Corp.*, 910 S.W.2d at 89.

Most appealable issues in family law cases are evaluated against an abuse of discretion standard, be it the issue of property division incident to divorce or partition, conservatorship, visitation, or child support. *Tate v. Tate*, 55 S.W.3d 1, 5-6 (Tex.App.–El Paso 2000, no pet.). While the appellant may challenge the sufficiency of the evidence to support findings of fact, in most circumstances, that is not enough. If, for example, an appellant is challenging the sufficiency of the evidence to support the court's valuation of a particular asset, he must also contend that the erroneous valuation caused the court to abuse its discretion in the overall division of the community estate. *See Lindsey v. Lindsey*, 965 S.W.2d 589, 593 n.3 (Tex.App.–El Paso 1998, no pet.). Here we are asked to review an alleged characterization error. In doing so, we are required to determine

not only whether the trial court's finding of separate property is supported by clear and convincing evidence, we must also determine whether the characterization error, if established, caused the trial court to abuse its discretion in the overall division of the community estate. These two prongs require first, a showing of error, and second, a showing that the error was harmful. TEX.R.APP.P. 44.1(a)(1) (no judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment). William must first establish error by challenging the legal or factual sufficiency of the evidence to support the separate property characterization. *Tate*, 55 S.W.3d at 6-7. Then, he must conduct a harm analysis; in other words, because of the mischaracterization the overall division of property constitutes an abuse of discretion. *Id.*; *Vandiver v. Vandiver*, 4 S.W.3d 300, 302 (Tex.App.–Corpus Christi 1999, pet. denied) (mischaracterization of community property as separate property is not reversible unless the mischaracterization had more than a *de minimus* effect on the just and right division).

William argues that these houses are community property because the houses were purchased on credit for which the lender did not agree to look solely to Tawana's separate property for payment, and as a result the credit used to purchase the properties would be community and therefor the rental properties should constitute community property. We agree that the existence or absence of this type of agreement or understanding on the part of the lender is controlling in this situation. *See Welder v. Welder,* 794 S.W.2d 420, 427-28 (Tex.App.–Corpus Christi 1990, no writ).

The intention of the spouses does not control the separate or community character of property purchased on credit during marriage. *Holloway v. Holloway*, 671 S.W.2d 51, 57 (Tex.App.–Dallas 1983, writ dism'd). Such property is community property unless there is an express agreement on the part of the lender to look solely to the separate estate of the purchasing spouse for satisfaction

of the indebtedness. *Glover v. Henry*, 749 S.W.2d 502, 503 (Tex.App.–Eastland 1988, no writ). The reasoning being that, "there being nothing in the note or related instruments to the contrary, the note is by presumption and in legal effect a community obligation, unless somehow lawfully shown to be otherwise. In the absence of any such showing, the result would necessarily be that, to the extent of the face of the note, the community furnished the original consideration for the purchase and thereby acquired a pro tanto ownership in the property . . . ." *Broussard v. Tian*, 156 Tex. 371, 295 S.W.2d 405, 406 (1956). The fact that the actual payment of all or some of the installments of the note were later made out of separate funds of one party would not affect the community ownership, but would merely give rise to a debt or charge in favor of that parties estate against the community enforceable by appropriate proceedings. *Id*.

We conclude that the evidence in this case is legally insufficient to support a finding that these rental properties were Tawana's separate property. While the prenuptial agreement provided that each of the parties would separately retain all rights, including profit and income in property owned or thereafter acquired, that provision did not reference debts. Regardless of any such agreement had one existed, there is no evidence to support a finding that the lenders who financed the rental home purchases for the lenders agreed to look solely to Tawana's separate property for payment. The premarital agreement only characterizes as separate those debts arising from properties listed in the exhibits. This agreement does not cover the debts on properties purchased after the marriage. Because the evidence does not support a finding other than that these properties were purchased on community credit, we find that the trial court erred in its characterization of said properties.

However, William's argument nevertheless fails because he has not attempted to demonstrate how the erroneous characterization caused the trial court to abuse its discretion in the overall division

of the community estate or that it had more than a *de minimus* impact on a just and right division of the community estate. He has wholly failed to conduct a harm analysis. Our review of the record indicates that harm cannot be shown. There is no evidence to establish actual value of the properties, the charge in favor of Tawana for her payments on the properties from her separate funds, nor the total value of the community estate. While we find that the court's characterization of the rental properties was error, Appellant has failed to show it was harmful and that the error probably caused the rendition of an improper judgment. Issue Two is overruled.

### *Income from Tawana's Separate Properties*

In Issue Three, William argues that the court erred in characterizing the income from Tawana's separate property as separate because that characterization was based on a premarital agreement that should be invalid because it was unconstitutionally created prior to the parties' marriage and not ratified after their marriage.

TEX. CONST. art. XVI, § 15 includes the following provision:

> [S]pouses also may from time to time, by written instrument, agree between themselves that the income or property from all or part of the separate property then owned or which thereafter might be acquired by only one of them, shall be the separate property of that spouse . . . .

TEX.FAM.CODE ANN. § 4.103 (Vernon 2006), entitled, "Agreement Between Spouses Concerning Income or Property form Separate Property," reads:

> At any time, the spouses may agree that the income or property arising from the separate property that is then owned by one of them, or that may thereafter be acquired, shall be the separate property of the owner.

The plain language of these provisions clearly does not authorize future spouses to enter into such income-from-separate-property agreements. *See Fanning v. Fanning*, 828 S.W.2d 135, 142-43 (Tex.App.–Waco 1992), (holding in part that this provision of TEX. CONST. art. XVI, § 15 applies

only to spouses and that premarital agreement attempting to invoke it was invalid), *aff'd in part, rev'd and remanded in part on other grounds*, 847 S.W.2d 225 (Tex. 1993).

However, another provision of TEX. CONST. art. XVI, § 15 reads:

> [P]ersons about to marry and spouses, without the intention to defraud pre-existing creditors, may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse . . . .

Thus, when read as a whole, the Texas Constitution allows prospective spouses as well as spouses to enter into written instruments to partition their property or exchange their community interests in property, and spouses, but not prospective spouses, may enter into written agreements re-characterizing as separate property the income or property from separate property. *Dokmanovic v. Schwarz*, 880 S.W.2d 272, 274 (Tex.App.–Houston [14th Dist.] 1994, no writ).

Some courts have concluded that premarital provisions relating to interests in future income from separate property may be held valid under Section 15, where the persons about to marry are exchanging or partitioning their community interests in their future income from separate property. *See Beck v. Beck*, 814 S.W.2d 745, 748-49 (Tex. 1991), *cert. denied*, 503 U.S. 907, 112 S.Ct. 1266, 117 L.Ed.2d 494 (1992) (premarital agreement re-characterizing community property as separate property held constitutional as an exchange of each parties' community interest in future income from separate property). *See Winger v. Pianka*, 831 S.W.2d 853, 859 (Tex.App.–Austin 1992, writ denied) (agreement reserving full ownership in certain listed property, including any and all income held valid as a partition or exchange of income to be acquired by the parties during their future marriage). In general, these courts have liberally construed premarital agreements regarding future income from separate property as bilateral partitions or exchanges. In essence, Texas courts have shown a willingness to "validate the intent of the parties and to uphold premarital agreements against

constitutional challenges unless the language of the agreement forecloses that choice." *Dokmanovic*, 880 S.W.2d at 275.

In *Fanning*, a provision of a premarital agreement providing that property in one schedule "is and shall remain the separate property of Future Husband," and that the property described in another schedule "is and shall remain the separate property of Future Wife" was held to effect a constitutional partition or exchange. 828 S.W.2d at 142. The provision included the parties' incomes from their careers and interest on separate funds, and did not explicitly reference the portion of the 1980 constitutional amendment applying only to spouses. *Id.*

William attempts to distinguish these cases by arguing that the 1991 agreement is a unilateral partition of income not a bilateral partition and/or mutual exchange. However, the premarital agreement clearly states the parties' desire, "to partition between themselves all of their property now existing or to be acquired as well as the income therefrom . . . ." This language establishes their intent to make a bilateral partition of the community interests in the future income from separate property. This agreement was carried out as evidenced by the behavior of the parties throughout their marriage with regard to banking and the paying of taxes. This agreement like those in *Fanning*, *Winger*, and *Beck* clearly sets out the parties' intent to exchange their community interests in income from separate property and in earnings. Issue Three is overruled.

### Southwest Airlines' Retirement Accounts

In Issue Four, William argues that the trial court's award of the two Southwest Airlines retirement accounts to Tawana as her separate property is not authorized by the Texas Constitution, and is preempted by the anti-alienation provision of the federal Employee Retirement Income

Security Act ("ERISA").[2] He argues that ERISA preempts the applicable law; not that the trial court lacked jurisdiction. "[W]here ERISA's preemptive effect would result only in a change of the applicable law, preemption is an affirmative defense which must be set forth in the defendant's answer or it is waived." *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991).

"Texas Rule of Civil Procedure 94 requires that matters constituting an avoidance or affirmative defense must be set forth affirmatively." *Gorman*, 811 S.W.2d at 546 n.8. "The purpose of Rule 94 . . . is to require the defendant to announce in his pleadings what his defense will be . . . and to give plaintiff the opportunity of knowing what character of proof he may need to meet the defenses pleaded." *Reid v. Associated Employers Lloyds*, 164 S.W.2d 584, 585 (Tex.Civ.App.– Fort Worth 1942, writ ref'd); *see also Davis v. City of San Antonio*, 752 S.W.2d 518, 519 (Tex. 1988). William raised this issue for the first time in his motion for new trial. William did not raise this issue in his pleadings. Therefore, William has waived this argument by failing to plead the affirmative defense of ERISA preemption. Issue Four is overruled.

## CONCLUSION

We affirm the judgment of the trial court.

GUADALUPE RIVERA, Justice

September 23, 2009

Before Chew, C.J., McClure, and Rivera, JJ.

---

[2] With regard to the constitutional issue William has failed to cite the constitutional provision purportedly violated or provide any supportive argument. Accordingly, we will not address that issue. *See* TEX.R.APP.P. 38.l(h).