

# IN THE
## TENTH COURT OF APPEALS

No. 10-10-00062-CV

TORNADO TRUCKING, INC.,

Appellant

v.

RICHARD A. DODD, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE
OF THE HEIRS AND ESTATE OF
GEORGE A. DODD, DECEASED;
LEOLA DODD, DORIS ANNETTE DODD,
GLENN WAYNE DODD. LON MARCUS DODD
AND KAREN DODD PAIR,

Appellees

From the 82nd District Court
Falls County, Texas
Trial Court No. 36,383

## MEMORANDUM OPINION

This appeal involves wrongful death, survival, and loss of consortium claims

brought by appellees, Richard A. Dodd, individually and as personal representative of

the heirs and estate of George A. Dodd, deceased; Leola Dodd; Doris Annette Dodd;

Glenn Wayne Dodd; Lon Marcus Dodd; and Karen Dodd Pair (collectively "the

Dodds"), against appellant, Tornado Trucking, Inc. ("Tornado"), regarding a collision between George's vehicle and an eighteen-wheel truck operated by a Tornado employee. A jury determined that Tornado was liable and awarded the Dodds $380,000 in personal-injury damages and $75,000 to Leola for loss of consortium with George, her husband. By five issues, Tornado argues that: (1) the trial court erred in admitting evidence of two positive drug tests of the driver of the eighteen-wheel truck; (2) the evidence supporting the award of mental anguish damages is insufficient, or in the alternative, excessive and manifestly unjust; (3) the evidence supporting the loss of consortium damages awarded to Leola is insufficient, or in the alternative, excessive and manifestly unjust; (4) the damage award pertaining to physical pain is excessive and manifestly unjust and should be remitted; and (5) damages awarded for physical impairment are excessive and manifestly unjust and should be remitted. We reverse and remand.

## I. BACKGROUND

At approximately 3:00 p.m. on January 4, 2007, an eighteen-wheel truck driven by Juan Leal Jr., an employee of Tornado, collided with a vehicle driven by George, an eighty-six-year-old rancher, on State Highway 77, near Rosebud, Texas.[1] As a result of the collision, George's vehicle sustained severe damage to the rear, and both vehicles left significant skid marks on the road. Jim Mallory, an expert in accident

---

[1] Witnesses, including Texas Department of Public Safety Trooper Josh Cashion, testified that drugs and alcohol were not involved in this accident. In fact, on the same day of the accident, Tornado tested Leal for drugs and alcohol. The test came back negative. Nevertheless, the results of Leal's prior and subsequent drug tests were admitted into evidence—two tests which yielded positive results.

reconstruction, noted that George's vehicle left a skid mark measuring 391.5 feet and that the eighteen-wheel truck driven by Leal left a 103-foot skid mark. Based on these measurements, Mallory estimated that George was driving fifty-five miles per hour and that Leal was likely driving between eighty-three and ninety miles per hour.

Leal testified that he first saw George's vehicle when the vehicles were approximately 300 feet apart. It was not until Leal was about 150 feet away from George's vehicle did he realize how slow George was driving. At that point, Leal slammed on his brakes. However, the eighteen-wheel truck collided with George's vehicle, resulting in George's vehicle being pushed into an adjacent ditch.

Rene Richter, a registered nurse at the Scott & White Memorial Hospital ("Scott & White") in Temple, Texas, recalled arriving at the scene of the accident and speaking with George and state troopers investigating the incident. When he first arrived, Richter remembered seeing a Texas Department of Transportation construction vehicle with orange lights on the side of the road near where the accident transpired. George told Richter that when he saw the construction vehicle on the side of the highway, he slammed on his brakes and "decided to come to a stop in the middle of the highway." Richter saw George "unbuckled and he was actually sitting with his feet out of the car . . . ." George was alert and oriented and did not complain of any pain, cuts, or bruising. Richter also noted that George "had no loss of consciousness and is pain free."

Josh Cashion, a trooper with the Texas Department of Public Safety, testified that when he arrived at the scene shortly after the accident had occurred, he heard George

playing the harmonica. Trooper Cashion saw a minor cut on George's right hand, but he described George as not "too shaken" and "a tough old guy." In fact, George refused medical treatment after the accident; instead, George left the scene of the accident with his son, Lonnie. Trooper Cashion issued Leal a citation for failing to control speed and concluded that George's actions were not the cause of the accident.[2] Trooper Cashion allowed Leal to drive the eighteen-wheel truck from the scene of the accident to Tornado's offices in Victoria, Texas.

The day after the accident, Robert McBee, a longtime family friend, noticed that George's eyes were dilated and recommended that George visit the Dodd family physician, Mike Locklear, M.D.[3] Dr. Locklear diagnosed George with a cervical sprain and a "left hand/wrist injury" and prescribed Tylenol and Ibuprofen for treatment of pain and inflammation. George returned to Dr. Locklear's office for a follow-up visit several days later. George, a man who was repeatedly described as stoic and reluctant to complain about pain, told Dr. Locklear that he was feeling "woozy." However, Dr. Locklear's diagnosis remained the same, and he specifically ruled out a concussion. At this time, Dr. Locklear recommended that George participate in physical therapy.

George's physical therapy began on January 26, 2007, and continued through the first half of February 2007. Beverly Luedke, a licensed physical therapist, treated

---

[2] Stephen Sanders, a safety director for Tornado, admitted at trial that Tornado was responsible for the accident; however, the extent of the company's liability was hotly contested.

[3] George's children noticed that George's energy level decreased after the accident and that George became depressed. Apparently after the accident, George stopped: (1) visiting his wife, Leola, whom he previously visited at a local nursing home five times a week; and (2) playing the harmonica. George's children also testified that George's mobility significantly decreased after the accident. However, Leola did not testify as to how the accident affected her relationship with George.

George.  When he first presented himself, George informed Luedke that he had some neck pain, rib pain, and pain in his right shoulder.  Luedke asked George to assign a value corresponding to his pain based on a scale of zero to ten, with zero representing no pain and ten "being so bad to be in the hospital."  George assigned a three to his neck pain, a six to his rib pain, and "only complained of soreness in his right shoulder."  When he was discharged from physical therapy on February 15, 2007, George stated that his shoulder felt much better but that he still had pain in his ribs.

George saw Dr. Locklear again about six weeks after his previous visit.  At this visit, George had swelling in his face and ankles; he was short of breath; he had gained ten pounds; and he had a heart murmur resulting from aortic stenosis.[4]  Dr. Locklear diagnosed George with congestive heart failure.  Two days later, George was admitted to Scott & White with kidney failure, heart failure, and edema.  Ultimately, George died on March 6, 2007.  George's death certificate indicates that "heart failure" and "vascular heart disease" were the causes of death with "urinary infection," "renal failure," and "suspected prostate cancer" as contributing causes.  Lige Buroughs Rushing Jr., M.D., a licensed physician, testified that George contracted pneumonia while hospitalized at Scott & White and that the pneumonia was also likely to be a contributing cause of George's death.  Dr. Rushing stated that there was no relationship between the accident

---

[4] It is important to note that the jury heard evidence that George had, for years prior to the accident, suffered from serious health problems, including long-term degenerative joint disease, hip replacement in 2004, long-term urinary and prostate problems dating back to at least 1994, a diagnosis of prostate cancer in 2004, a history of chronic low oxygen levels requiring "home oxygen" since July 2006, and chronic pedal edema.  In addition to his problems, several witnesses noted that George typically refused to take prescribed medications, which Dr. Locklear acknowledged may have exacerbated his health issues.

and George's eventual death on March 6, 2007. Plaintiff's expert, David Wayne Simonak, D.O., disagreed with Dr. Rushing's findings and noted that George died as a result of "respiratory failure secondary to an overwhelming pulmonary bacterial infection that led to multisystem organ failure and their [the Dodds'] decision to basically pull the—pull the pulmonary life support" and that George's death was proximately caused by the accident.

Subsequently, the Dodds filed suit against Tornado, alleging wrongful-death, survival, and loss of consortium claims. The case proceeded to trial, and the jury concluded that Leal and Tornado proximately caused George's injuries. The jury apportioned responsibility for the accident at 30% for Leal and 70% for Tornado. In addition, the jury awarded the Dodds: (1) $5,000 in medical expenses; (2) $125,000 for physical pain; (3) $125,000 for mental anguish; and (4) $125,000 for physical impairment. Leola was awarded $75,000 for approximately two months' loss of consortium sustained prior to George's death. Finally, the jury rejected the Dodds' wrongful-death claims. On November 10, 2009, the trial court signed a judgment ostensibly adopting the jury's findings.[5] Specifically, the trial court's judgment awarded: (1) the Dodds $380,000 in personal-injury damages (i.e., the sum of the medical expenses, mental anguish damages, physical pain damages, and physical impairment damages awarded by the jury); and (2) Leola $75,000 in damages for loss of consortium. Furthermore, the trial court entered a take-nothing judgment against the

---

[5] The trial court's judgment did not provide for recovery of damages from Leal.

Dodds on their wrongful-death claims against Tornado. The Dodds and Tornado both filed notices of appeal in this matter.[6]

## II. EVIDENCE OF LEAL'S DRUG HISTORY

By its first issue, Tornado complains about the admission into evidence of the results of two positive drug tests taken by Leal—one occurring four years prior to the date of the accident and the second occurring eight months after the accident. Tornado argues that the drug test results "are patently irrelevant" and "undoubtedly inflamed the jury and resulted in the excessive damage awards." *See* TEX. R. EVID. 401, 402. The Dodds counter that Tornado did not preserve this issue because it did not object. Moreover, the Dodds assert that even if the complained-of evidence was improperly admitted, any error would be harmless because the complained-of evidence is cumulative of other properly admitted evidence. In response to the Dodds' preservation argument, Tornado states that the trial court conducted a hearing outside the presence of the jury on, among other things, the complained-of evidence and subsequently admitted the evidence over Tornado's objection, thus obviating the need for an objection each time the evidence was introduced.

### A. Preservation of Error and Waiver

At two different pre-trial hearings held outside the presence of the jury, Tornado objected to the introduction of evidence regarding Leal's drug history. Specifically, Tornado argued to the trial court that the admission of such evidence was irrelevant and would inflame the jury. The trial court ultimately overruled Tornado's objection.

---

[6] In their notice of appeal, the Dodds do not specifically advance cross-issues for appeal; they merely respond to the arguments made in Tornado's appellant's brief.

Texas Rule of Evidence 103(a)(1) provides that "[w]hen the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections." TEX. R. EVID. 103(a)(1); *see Jurek v. Couch-Jur*ek, 296 S.W.3d 864, 870 (Tex. App.—El Paso 2009, no pet.) (noting that error pertaining to the alleged improper admission of evidence is preserved by a running objection or if objected to outside the presence of the jury). Because Tornado objected to the complained-of evidence outside the presence of the jury and pursued the objection to an adverse ruling, we conclude that this issue was preserved for appeal. *See* TEX. R. EVID. 103(a)(1); *see also Jurek*, 296 S.W.3d at 870.

The Dodds also argue that Tornado waived this issue by questioning Leal regarding his drug history. This argument is unfounded, especially because the supreme court has held that "a party is entitled to explain or rebut evidence admitted over objection and is not required 'to sit idly by and take its chances on appeal.'" *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 25 (Tex. 2008) (quoting *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 4 (Tex. 1986)). Therefore, even though Tornado rebutted the Dodds' evidence regarding Leal's drug history, we cannot say that Tornado waived this issue. *See id.*; *see also Smithwick*, 724 S.W.2d at 4.

The Dodds further argue that error, if any, in the admission of evidence detailing Leal's drug history is harmless because the complained-of evidence is cumulative of other evidence admitted without objection. We disagree. Because rule 103(a)(1) did not require Tornado to object to each time the complained-of evidence was introduced,

Tornado, by objecting to the complained-of evidence outside the presence of the jury, ostensibly received a running objection pertaining to each instance the evidence was introduced and, thus, did not waive this issue. *See* TEX. R. EVID. 103(a)(1). Given our resolution of the Dodds' counter-arguments, we must now analyze the substance of Tornado's complaints.

**B.  Standard of Review and Applicable Law**

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion if it acts without regard to guiding rules or principles. Malone, 972 S.W.2d at 43. The trial court's evidentiary ruling must be upheld if there is any legitimate basis for the ruling. *See id.* We will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment or probably prevented appellant from properly presenting its case to the court of appeals. *See* TEX. R. APP. P. 44.1(a); *see also Malone*, 972 S.W.2d at 43; *Cook v. Sabio Oil & Gas, Inc.*, 972 S.W.2d 106, 111 (Tex. App.—Waco 1998, pet. denied) (stating that an evidentiary ruling will result in reversal of the cause only where the whole case turns on that evidence). In determining whether the judgment turns on the particular evidence excluded or admitted, we review the entire record. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004).

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Rule 402 provides, in part, that "[e]vidence which is not relevant is inadmissible." *Id.* at R. 402.

## C. The Relevance of Leal's Drug History

At the pre-trial hearings, Tornado asserted that evidence of Leal's positive drug tests were irrelevant because this accident did not involve drugs. The first positive drug test occurred more than four years before the accident, when Leal worked for Texas Liquid. The other positive drug test transpired eight months after the accident occurred, when Leal drove a dump truck for Dorsett Brothers.[7] However, as Tornado argued to the trial court, Leal was drug tested on the same day as the accident, and the test came back negative. Trooper Cashion, one of the investigating officers of the accident, testified that no drugs or alcohol were involved in this accident. Because he did not suspect drugs and alcohol were involved in this accident, Trooper Cashion allowed Leal to drive the eighteen-wheel truck about 150 miles from the scene of the accident to Tornado's offices in Victoria. Based on Trooper Cashion's testimony and the results of the drug test conducted on the same day of the accident, we fail to see how evidence of Leal's prior and subsequent drug tests were relevant in this matter. *See* TEX. R. EVID. 401, 402. Neither the Dodds nor can we articulate a legitimate reason for

---

[7] Specifically, the trial court allowed deposition testimony from Leal regarding his failed drug test while employed by Dorsett Brothers. Regarding that failed drug test, Leal denied ever consuming drugs but acknowledged that cocaine was present in his system because "this girl put it [cocaine] on my penis and we had sex, and I guess it got into my system like that."

admitting evidence of Leal's prior and subsequent drug tests, especially considering the record clearly demonstrates that drugs and alcohol were not involved in this accident.[8] *See, e.g., Perkins v. Douglass Distrib. Co.*, No. 11-98-00082-CV, 2000 WL 34234578, at **2-3 (Tex. App.—Eastland Mar. 9, 2000, no pet.) (not designated for publication).[9] As a result, we conclude that the trial court abused its discretion in admitting evidence of the results of Leal's prior and subsequent drug tests. *See* TEX. R. EVID. 401, 402; *see also McShane*, 239 S.W.3d at 234; *Malone*, 972 S.W.2d at 43. However, our analysis does not conclude here. We must now determine whether the erroneous admission of the results of Leal's prior and subsequent drug tests likely resulted in the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *see also Malone*, 972 S.W.2d at 43; *Cook*, 972 S.W.2d at 111.

---

[8] In all fairness, the Dodds argue that the admission of Leal's prior and subsequent drug tests are "relevant to the following issues raised by the pleading: Tornado's negligence in hiring Leal; Tornado's negligent failure to investigate Leal's driving record; Tornado's failure to properly qualify Leal; negligent entrustment; and, to the issue of whether such negligence was the proximate cause of the collision." However, none of these theories were submitted to the jury or adequately clarified through testimony at trial, and Stephens, a Tornado representative, admitted that Leal hit George's vehicle with an eighteen-wheel truck and that Tornado was responsible.

[9] In *Perkins v. Douglass Distributing Co.*, Perkins and two of his grandchildren were involved in a collision with a tanker truck operated by Douglass Distributing Company. No. 11-98-00082-CV, 2000 WL 34234578, at *1 (Tex. App.—Eastland Mar. 9, 2000, no pet.) (not designated for publication). Perkins attempted to introduce evidence of the tanker truck driver's "reputation for using cocaine," including the results of two drug tests taken several weeks after the accident occurred which revealed "the presence of cocaine metabolites," expert testimony that cocaine metabolites can remain in one's system for seven to fourteen days, evidence that Douglass Distributing requested the tanker truck driver to submit to a drug test the day after the accident occurred, and employment records indicating that the tanker truck driver was suspended for refusing to submit to the drug test the day after the accident occurred and was terminated because of positive results on subsequent drug tests. *Id.* at *2. The trial court excluded the evidence without articulating a basis for the exclusion. *Id.* The Eastland Court of Appeals concluded that the trial court did not abuse its discretion in excluding the evidence because it was not relevant given that there was no evidence in the record indicating "that [the tanker truck driver] was under the influence of cocaine at the time of the accident" and the inclusion of such evidence "would have allowed the jury to speculate that [the tanker truck driver] was under the influence of drugs at the time of the accident." *Id.* at *3.

## D. HARMLESS ERROR REVIEW

We consider several factors in conducting a harmless error review for the erroneous admission of evidence: the state of the evidence, the strength and weakness of the case, and the verdict. *Reliance Steel & Aluminum Co.*, 267 S.W.3d at 871. Stated otherwise, we consider the effect of the admission of the evidence; the role the evidence played in the context of the trial; efforts by counsel to emphasize the erroneous evidence; and whether the admission of the improper evidence was calculated or inadvertent. *See id.* at 871-75. If erroneously admitted or excluded evidence was "crucial" to a "key issue," the error is likely to be found harmful. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). We further consider whether there was contrary evidence that the improperly admitted evidence was calculated to overcome. *Id.*; *Nissan Motor Co.*, 145 S.W.3d at 144.

Here, both Stephen Sanders, a safety director for Tornado, and Leal admitted that Leal's eighteen-wheel truck rear-ended George's vehicle and that Tornado was responsible. With regard to George's injuries, Luedke testified that George had neck pain, rib pain, and pain in his right shoulder and that the highest value George assigned to the pain was a six, based on a scale of zero to ten. And, George was released from physical therapy after only a couple of weeks. Moreover, Trooper Cashion recalled George stating that he was fine, refusing medical treatment, and playing his harmonica shortly after the accident. In addition, when he arrived at the scene of the accident, Richter saw George unbuckled and sitting with his feet out of the car. Richter stated that George was alert and oriented; did not complain of any pain, cuts, or bruising; and

"had no loss of consciousness and [was] pain free." George later presented himself to Dr. Locklear with additional health complaints; however, the record contains substantial evidence documenting that George, an eighty-six-year-old male, had numerous serious medical issues, including congestive heart failure, aortic stenosis, renal failure, and edema, that existed prior to the accident and that many of George's subsequent health complaints were unrelated to the accident. Nevertheless, Dr. Locklear diagnosed George with a neck sprain and a sore wrist and prescribed Tylenol and Ibuprofen. Furthermore, counsel for the Dodds questioned Leal repeatedly about his drug use so as to accentuate Leal's positive drug tests. And, in their appellee's brief, the Dodds further accentuated Leal's drug tests by devoting the first two paragraphs of their initial statement of facts to the improperly admitted evidence.

Though the record contains scant evidence of serious injuries sustained by George as a direct result of the accident, the Dodds were awarded $380,000 in personal-injury damages and Leola was awarded $75,000 for loss of consortium with George, amounts that arguably were inflated, at least in part, by the admission of evidence regarding Leal's prior and subsequent drug test results. *See, e.g., Demby v. Rivers*, No. 01-08-00965-CV, 2009 Tex. App. LEXIS 9777, at **1-8 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009, no pet.) (mem. op.) (affirming a jury award of $10,000 for past physical pain and mental anguish, $10,000 for past physical impairment, $5,000 for future physical pain and mental anguish, and $5,000 for future physical impairment pertaining to a motor vehicle collision that injured plaintiff's neck and back and aggravated a pre-existing shoulder injury; plaintiff had muscle strains and spasms as a result of the

accident; the pain was sufficient to keep plaintiff from performing daily activities); *Ching Enters, Inc. v. Barahona*, No. 01-07-00454-CV, 2008 Tex. App. LEXIS 7299, at **2-9, 34-42 (Tex. App.—Houston [1st Dist.] Aug. 28, 2008, no pet.) (mem. op.) (affirming a jury verdict for, among other things, $25,808 for past pain and suffering, $10,000 for future pain and suffering, $25,808 for past physical impairment, $10,000 for future physical impairment, $25,808 for past disfigurement, and $5,000 for future disfigurement in a case where plaintiff broke several fingers while operating a carrot-grating machine at her place of employment; the injuries required multiple surgeries and caused plaintiff to feel "really awful"); *Sw Bell Tel., L.P. v. Valadez*, No. 2-07-129-CV, 2008 Tex. App. LEXIS 1153, at **20-22 (Tex. App.—Fort Worth Feb. 14, 2008, no pet.) (mem. op.) (affirming a jury verdict of $15,000 for physical pain and mental anguish and $5,000 for past physical impairment in a situation where plaintiff fell in a hole created by Southwestern Bell, which injured plaintiff's shoulder, required surgery to reattach ligaments in the shoulder, and caused plaintiff "excruciating pain"); *Delta Drilling Co. v. Cruz*, 707 S.W.2d 662, 667 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) (reversing a jury award of $60,000 for loss of consortium in a case where plaintiff's husband was seriously injured from an elevator falling from a drilling rig floor to the ground because the wife did not testify and the husband's testimony did not amount to evidence of the loss of "the emotional or intangible elements of the martial relationship"). Because we conclude that the trial court abused its discretion in admitting evidence of Leal's prior and subsequent drug test results and that the admission of such evidence likely resulted in the rendition of an improper judgment,

we sustain Tornado's first issue. Given our resolution of Tornado's first issue, we need

not address Tornado's remaining issues. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

Having sustained Tornado's first issue, we reverse and remand for a new trial.[10]


AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Reversed and remanded
Opinion delivered and filed July 6, 2011
[CV06]

---

[10] The Dodds argue that if we determine that a remand of their survival and loss-of-consortium claims is necessary, we should exercise our discretion to remand the wrongful-death claim—a claim the jury rejected and the trial court entered a take-nothing judgment upon—in the interest of justice. The Dodds cite two cases for the proposition that a partial remand is improper unless the issues involved are severable. *See State Dep't of Highways & Pub. Transp. v. Cotner*, 845 S.W.2d 818, 819 (Tex. 1993) (per curiam); *Polley v. Odom*, 957 S.W.2d 932, 941 (Tex. App.—Waco 1997), *judgm't vacated*, 963 S.W.2d 917 (Tex. App.—Waco 1998, no pet.). We note that the Dodds' survival and loss-of-consortium claims are distinct causes of actions that are severable and that the Dodds did not argue any cross-issues in their appellees' brief; in particular, on appeal, the Dodds did not complain about the trial court's take-nothing judgment as to their wrongful-death claims. *See* TEX. R. APP. P. 38.1(i); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 646 (Tex. 2009) (orig. proceeding) (stating that loss-of-consortium claims are fundamentally different from a statutory wrongful-death claim and that loss-of-consortium claims are "separate and independent claims distinct from the underlying [wrongful-death] action"); *Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33, 35 (Tex. 1963) (noting that survival actions and wrongful-death actions are separate and distinct causes of action); *see also Andrews v. Rodeo Square Apartments*, No. 01-05-00548-CV, 2006 Tex. App. LEXIS 6415, at *9 n.3 (Tex. App.—Houston [1st Dist.] July 20, 2006, no pet.) (mem. op.) (same). We, therefore, reject the Dodds' assertion that a remand of this case includes their wrongful-death claims.